TOTAL HOLDINGS USA, INC.
and Total Composites,
Inc., Plaintiffs,

v.

CURRAN COMPOSITES, INC. and
C–Two, LLC, Defendants.

C.A. No. 4494–VCS.

Court of Chancery of Delaware,
Kent County.

Submitted: Aug. 24, 2009.
Decided: Oct. 9, 2009.

Stephen E. Jenkins, Esquire, Catherine A. Gaul, Esquire, Ashby & Geddes, P.A., Wilmington, Delaware; Elliot E. Polebaum, Esquire, Daniel E. Loeb, Esquire, and Dominic A. Arni, Esquire, Fried, Frank, Harris, Shriver & Jacobson, LLP, Washington, District of Columbia, Attorneys for Total Holdings USA, Inc. and Total Composites, Inc.

Thomas A. Beck, Esquire, David Schmerfeld, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware; Floyd R. Finch, Jr., Esquire, Husch, Blackwell & Sanders, LLP, Attorneys for Curran Composites, Inc. and C–Two, LLC.

## OPINION

STRINE, Vice Chancellor.

### I. *Introduction*

This opinion addresses the request of defendant Curran Composites, Inc. to dismiss this action because this court supposedly lacks personal jurisdiction over it. Curran, a Missouri corporation with no operations in Delaware, argues that, despite its status as a general partner of Cook Composites and Polymers, a general partnership that was established by its governing agreement "in, and in accordance with the laws of, the State of Delaware," there is no statutory or constitutional basis for this court to exercise personal jurisdiction over it. Moreover, Curran says there is no need for this case to proceed and seeks alternatively to dismiss or stay this action in favor of a second-filed Missouri action that it brought in response to this action.

Although Curran raises a number of issues I must address that require consideration of Cook Composites' status as a general partnership and how that affects whether Curran, as a non-resident partner of a Delaware general partnership, is subject to this court's jurisdiction, at bottom

the problem the court faces is familiar and is answered by the Delaware Revised Uniform Partnership Act's inclusion of a consent provision, § 15–114, analogous to 10 *Del. C.* § 3114 in the Delaware General Corporation Law ("DGCL"). That consent provision clearly provides for this court to exercise personal jurisdiction over Curran in a dispute "involving or relating to the business of the partnership or a violation by the partner … of a duty to the partnership or any partner of the partnership" and also gives Curran sufficient notice that it could face suit here in the event of such a dispute. In particular, I conclude that § 15–114 of the Delaware Revised Uniform Partnership Act ("DRUPA") clearly provides a basis for the exercise of personal jurisdiction where: (1) the general partnership agreement clearly chooses Delaware law and provides that the general partnership was established "in, and in accordance with the laws of, the State of Delaware"; (2) the controversy involves a dispute between the partners over the meaning of the partnership agreement; and (3) the non-resident partner remained a partner to the general partnership, the partners executed an amended and restated partnership agreement, and the dispute arose all after the DRUPA and its consent to jurisdiction provision clearly became applicable to the general partnership.

Consistent with this analysis, I also conclude that there is no due process problem with applying § 15–114 of the DRUPA to a non-resident partner of a general partnership for a dispute involving the meaning of the general partnership agreement. Having chosen to avail itself of the advantages of Delaware as a domicile for the general partnership and being charged with knowledge that the DRUPA subjected general partners of Delaware general partnerships to the jurisdiction of the Delaware courts, Curran cannot claim unfair surprise over having to litigate in this court a dispute among the partners about the meaning of a critical provision in the general partnership agreement. Nor does it face any burden from defending suit here that would otherwise support dismissal or a stay of this first-filed action in deference to Curran's own second-filed Missouri action.

## II. *Factual Background*

### A. *The Parties*

Plaintiff Total Composites, Inc., a subsidiary of Total Holdings USA, Inc., is a Delaware corporation whose principal place of business is in the Kansas City, Missouri area. The ultimate parent entity of Total Composites and Total Holdings is Total S.A., a French oil & gas company that is among the largest firms in its industry (collectively "Total"). Defendant Curran and its subsidiary C–Two, LLC, which was formed solely to hold a portion of Curran's interest in the general partnership with Total, are both Missouri entities whose principal places of business are also in Missouri. Neither Curran nor C–Two (collectively "Curran") operate facilities in Delaware or do any business in Delaware.

In 1990, Curran and Total formed a joint venture, a general partnership named Cook Composites and Polymers, to develop, market, and manufacture composite materials and to pursue acquisitions of other businesses. Cook Composites operated in Missouri and other states; however, it did not do business in Delaware. Also, Cook Composites never filed a statement of partnership existence with the Delaware Secretary of State.

### B. *The Joint Venture Agreement Establishing Cook Composites As A Delaware General Partnership*

The original Joint Venture Agreement ("JVA"), dated February 9, 1990, establishing Cook Composites was negotiated and executed outside of the State of Delaware. A number of the agreement's pro-

visions are noteworthy. First, the JVA indicates that "the Participants shall ... organize and associate themselves as partners in a general partnership ... *in, and in accordance with the laws of,* the State of Delaware."[1] Second, the JVA includes a choice of law provision indicating that "this Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Delaware."[2] The JVA does not include a forum selection clause.

When the 1990 JVA was executed, the Delaware Uniform Partnership Act ("DUPA") governed general partnerships organized under Delaware law. On July 12, 1999, however, the Delaware General Assembly enacted the DRUPA, which repealed the DUPA and governed all Delaware general partnerships after a two year grace period expired. Specifically, § 15–1206(b) of the DRUPA plainly states that "[o]n and after January 1, 2002, this chapter governs *all* partnerships."[3] In other words, the General Assembly provided for a two year grace period before the DRUPA applied to all partnerships.[4]

On July 8, 2004, Curran and Total entered into a second joint venture agreement, which restated the original 1990 JVA and the amendments to which the parties had agreed over the years. In the recitals in the 2004 JVA, the parties indicate that they "do not intend to alter any rights or remedies currently in effect under the JVA." Accordingly, the 1990 and 2004 agreements are, for the purposes of this litigation, nearly identical. For example, just like in the original agreement, § 1.1 of the 2004 JVA says that "the Participants have organized and associated themselves as partners in a general partnership ... *in, and in accordance with the laws of,* the State of Delaware."[5] And, the choice of law provision requires that "[t]his Agreement shall be construed and enforced in accordance with and governed by the law of the State of Delaware." Importantly, the 2004 agreement does not include any indication that the parties intended the DUPA to continue to govern the partnership despite the passage of the DRUPA in 1999 and the fact that the DRUPA had become applicable to all general partnerships as of January 1, 2002.

One material difference between the 1990 and 2004 agreements is the inclusion in the 2004 agreement of an option for Curran to require Total to buy Curran's interest in the joint venture at book value.[6] This "put" provision precipitated the current controversy.

### C. The Dispute That Led To The Current Lawsuit

On March 23, 2009, Curran exercised its right under the 2004 JVA to put its inter-

---

1. Def.'s Opening Br., Ex. A. at § 1.1 (emphasis added).

2. *Id.* at § 15.6.

3. Emphasis added.

4. *See* ALAN R. BROMBERG & LARRY E. RIBSTEIN, BROMBERG AND RIBSTEIN ON LIMITED LIABILITY PARTNERSHIPS, THE REVISED UNIFORM PARTNERSHIP ACT, AND THE UNIFORM LIMITED PARTNERSHIP ACT (2001) 385–86 (2003) ("Section 1206 gives partners an ample opportunity to revise their contracts before the new law applies and third parties some notice of changes in the rules that may affect partners' and partner-

ships' liability. These protections are not only good policy, but help insulate the act from constitutional attack.").

5. Emphasis added.

6. *See* Def.'s Opening Br., Ex. C at § 8.7 ("*1995 CURRAN Put.* TCI grants to CURRAN, its successors and permitted assigns, an option to require TCI to purchase from CURRAN an interest in the Venture in an aggregate amount up to 18.26% of all the Venture Interests (the '1995 CURRAN put') exercisable at any time or from time to time on or after January 1, 1995 at a purchase price based on the Book Value of the Venture.").

ests in Cook Composites to Total. Upon the exercise of the put, Total became the owner of Curran's interest in the joint venture. The dispute between the parties centers on how Curran's interest should be valued. Total believes that the price it paid for Curran's interest was inflated by $8 million, while Curran argues that Total underpaid by $2.1 million. Total filed a Complaint in this court on April 7, 2009 seeking to recover the alleged overpayment and to obtain a declaratory judgment that it does not owe Curran an additional $2.1 million. Curran responded with its own Complaint, claiming that Total underpaid by $2.1 million, in Missouri state court on April 9, 2009.

### III. Legal Analysis

■ On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie case establishing jurisdiction under the relevant statute.[7] When deciding the motion, the court is to decide, first, whether jurisdiction is appropriate under a relevant statute and, if so, whether the exercise of such jurisdiction would offend the defendant's due process rights under the Fourteenth Amendment of the United States Constitution.[8] All factual disputes are viewed in a light most favorable to the plaintiff.[9]

### A. Whether The Delaware Revised Uniform Partnership Act Applies To Cook Composites

■ Before examining whether Curran consented to Delaware jurisdiction, I must first determine which partnership statute—the original DUPA in force when the JVA was executed in 1990 or the subsequent DRUPA—applies. The key difference between these two statutes is that the DUPA did not include a personal jurisdictional consent mechanism that allows jurisdiction to be exercised over non-resident partners (i.e., a provision akin to § 3114 of the DGCL) as does § 15–114 of the later DRUPA. Therefore, if the DRUPA does not apply, and the DUPA governs the JVA, then there is no statutory basis to exercise personal jurisdiction over Curran.[10]

Curran argues that to apply the DRUPA to partnerships originally formed under the DUPA would violate an important principle of statutory interpretation. Curran argues that statutory amendments cannot be applied retroactively unless the General Assembly explicitly so provides, citing this court's opinion, discussed in more detail below, in CRI Liquidating for support.[11] According to Curran's theory, the General Assembly did not explicitly provide for retroactive application, because it did not include language in the DRUPA

7. See Werner v. Miller Tech. Mgmt., L.P., 831 A.2d 318, 326 (Del.Ch.2003); Computer People, Inc. v. Best Int'l Group, Inc., 1999 WL 288119, at *5 (Del.Ch. Apr. 27, 1999); Outokumpu Eng'g Enters., Inc. v. Kvaerner Enviropower, Inc., 685 A.2d 724, 727 (Del.Super.1996).

8. See Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc., 1996 WL 608492, at *1 (Del.Ch. Oct. 16, 1996).

9. See e.g., Mobile Diagnostic Group Holdings, LLC v. Suer, 972 A.2d 799, 802 (Del.Ch.2009); Boone v. Oy Partek Ab, 724 A.2d 1150, 1155 (Del.Super.1997).

10. Total's arguments for exercising jurisdiction over Curran under Delaware's Long Arm Statute, 10 Del C. § 3104, were rejected at oral argument.

11. CRI Liquidating Reit, Inc. v. A.F. Evans Co., Inc., 730 A.2d 1244, 1245 (Del.Ch.1997) ("[S]tatutory amendments do not operate retroactively unless the General Assembly explicitly so provides."); see also HMG/Courtland Props. v. Gray, 729 A.2d 300, 306 (Del.Ch. 1999).

along the lines of "Chapter 15 shall be applied retroactively to all partnerships, whether or not registered with the Secretary of State, if the partnerships are governed by the laws of Delaware." [12]

But, the relevant statutory text of the DRUPA refutes Curran's argument. That text is brief and as follows: "On and after January 1, 2002, this chapter governs *all* partnerships." [13] Curran's argument therefore lacks force because the language of § 1206 of the DRUPA is clear: on January 1, 2002, the DRUPA applies to all general partnerships, whether formed before or after that Act comes into effect. In hindsight, many statutes, like contracts, could be drafted with greater clarity. But, that is not the case here, where the General Assembly's intentions are easy to discern. The General Assembly passed the DRUPA in 1999 and gave all general partnerships notice that, unless they changed domicile or engaged in some other private ordering to escape the impending application of the Revised Act, the DRUPA would govern their affairs after January 1, 2002. Section 15–1206(b) succinctly and directly gives parties notice that the DRUPA will apply universally to all partnerships as of a certain date. [14]

The particular circumstances of this case also make clear that Curran should have been, and indeed was in fact, on notice of the DRUPA's applicability. Curran, which is a sophisticated business advised by competent counsel, had ample time to take advantage of the two year grace period the General Assembly afford- ed. But it did nothing. In 2004, shortly after the DRUPA came into effect, the parties amended and restated the JVA; however, Curran did not take the opportunity to expressly indicate in this restatement of the agreement that the parties intended any potential disputes to be adjudicated in a particular forum other than Delaware. Furthermore, evidence from early 2009 indicates that Curran believed its obligations under the Joint Venture Agreement were governed by the DRU- PA. [15] These emails belie any argument that Curran did not anticipate that the DRUPA would govern the partnership. Put bluntly, the General Assembly gave all parties to Delaware general partnerships clear notice that, absent express opting out, the DRUPA would govern their affairs as of Jan. 1, 2002. Curran, as a general partnership of Cook Composites, has had clear notice of that reality since 1999 and cannot claim any unfair surprise that Cook Composites, which restated its Joint Venture Agreement in full in 2004, is governed by the DRUPA.

Curran nevertheless argues that application of the DRUPA to Cook Composites violates well-established principles of statutory interpretation, citing this court's opinion in *CRI Liquidating* for support. There, the issue was whether the consent to jurisdiction provision in the LLP statute, 6 Del. C. § 17–109, allowed jurisdiction to be exercised over a non-resident participant in a limited partnership that filed its certificate a year before § 17–109 became effective. [16] The court reasoned

---

**12.** Def.'s Opening Br. at 13.

**13.** 6 Del. C. § 15–1206(b) (emphasis added).

**14.** *See also Johnson v. Foulk Rd. Med. Ctr. P'ship,* 2001 WL 1563693, at *2 n. 7 (Del.Ch. Nov. 21, 2001) ("Pursuant to 6 Del. C. § 15–1206(b), as of January 1, 2002, the revised statute will apply to all partnerships that do not elect to be governed by the old law.").

**15.** Letter from Stephen Jenkins to the Honorable Leo E. Strine, Jr. (Aug. 24, 2009), at Ex. A (indicating that Curran's own counsel analyzed a legal issue assuming that the DRUPA governed the affairs of Cook Composites).

**16.** *CRI Liquidating,* 730 A.2d at 1245.

that jurisdiction would only be proper "if the General Assembly specifically provided that the statute operates retroactively, or, failing that, if the Court determines that public policy requires retroactive application."[17] Although § 17–1108 of the LLP statute provides that "[a]ll provisions of this chapter may be altered from time to time or repealed and all rights of partners are subject to this reservation," the court found that § 17–1108 did "not constitute an explicit legislative command" that all future amendments to the Act would apply retroactively.[18] The court reasoned that § 17–1108 did not give sufficient notice to the parties of the particular statutory changes that would affect their relationships.[19] Without such notice, the court reasoned that exercising jurisdiction would only be appropriate if there were overriding public policy considerations.[20] Finding none, the court held that exercising jurisdiction would be improper.[21]

Curran's reliance on *CRI Liquidating* in this context is mistaken. The situation in the present dispute is different because, as discussed above, the statutory text of § 15–1206 of the DRUPA is clear and provided parties plain *advance* notice that the DRUPA would apply to *all* general partnerships after January 1, 2002. Therefore, application of the DRUPA to Cook Composites is clearly required here by the General Assembly's mandate.

*CRI Liquidating* is distinguishable for another reason. Here, unlike the parties to the LLP at issue in *CRI*, the parties to the Cook Composites partnership fully restated the JVA and confirmed Cook as a Delaware general partnership after all of the DRUPA provisions, including § 15–114, were in effect.

### B. Whether Cook Composites Is A Delaware General Partnership

■ Because the DRUPA applies to Cook Composites and its partners, the next issue is an unusual one raised by Curran. Despite having assented on several occasions to Cook Composites' formation as a general partnership "in, and in accordance with the laws of, the State of Delaware," Curran argues in its briefs that Cook Composites is not a Delaware general partnership at all. At oral argument, Curran equivocated on just what Cook Composites is, and therefore I now address and reject its argument that Cook Composites is not a general partnership domiciled in Delaware.

The language of the Joint Venture Agreement itself and of § 15–106 of the DRUPA combine to dictate that Cook Composites is a Delaware general partnership. Section 15–106 of the DRUPA sets forth the criteria by which the law governing a partnership is determined. In its entirety, § 15–106 provides:

(a) Except as otherwise provided in subsection (b), the law of the jurisdiction governing a partnership agreement governs relations among the partners and between the partners and the partnership.

(b) The law of the State of Delaware governs relations among the partners and between the partners and the partnership and the liability of partners for an obligation of a limited liability partnership.

17. *Id.* at 1246.

18. *Id.*

19. *Id.* ("Nothing in § 17–1108 ... could have put general partners of Delaware limited partnership on even constructive notice that the

filing of a certificate of limited partnership would subject them to personal jurisdiction in Delaware.").

20. *Id.*

21. *Id.* at 1246–47.

(c) If (i) a partnership agreement provides for the application of the laws of the State of Delaware, and (ii) the partnership files with the Secretary of State a statement of partnership existence or a statement of qualification, then the partnership agreement shall be governed by and construed under the laws of the State of Delaware.

Section 15–106(a) of the DRUPA determines the governing law by reference to traditional choice of law considerations and, in this respect, differs from § 106(a) in the model Revised Uniform Partnership Act ("RUPA"), which provides that "the law of the jurisdiction in which a partnership has its chief executive office governs relations among the partners." Section 15–106(b) of the DRUPA, although somewhat elusively drafted, seems to govern when the DRUPA applies to the affairs of limited liability partnerships.[22] Section 15–106(c) of the DRUPA does not have a counterpart in the model RUPA—it is an original creation of Delaware's General Assembly—and is the crux of the problem of how to interpret § 15–106.

Curran's argument is that the DRUPA does not govern Cook Composites because § 15–106(c) is not satisfied in this case. First, Curran argues that, because § 15–106(a) requires a general choice of law analysis, situations may arise where application of Delaware law is inappropriate even when the parties include a Delaware choice of law provision in the partnership agreement. For support, Curran points to the following commentary to § 106 of the RUPA:

[T]he partners may by agreement select the law of [a] State to govern their internal affairs, subject to generally applicable conflict of laws requirements. For example, ... the law chosen will not be applied if the partners or the partnership have no substantial relationship to the chosen State or other reasonable basis for their choice or if application of the law of the chosen State would be contrary to a fundamental policy of a State that has a greater material interest than the chosen State.[23]

Pointing to the possibility that a partnership choosing Delaware law may nevertheless have arguably more substantial contacts with another forum, Curran's next step is to argue that the General Assembly, when drafting the DRUPA, addressed this potential issue by including § 15–106(c) in the Act. That is, Curran argues that § 15–106(c) provides clear pre-conditions—namely, the inclusion of a Delaware choice of law provision *and* registration

---

**22.** I believe that the language of § 15–106(b), studied in isolation, can arguably be read to require Delaware law to govern (1) relations between partners (including partners to a general partnership) and, separately, (2) the liability of partners to a limited liability partnership. But, other provisions in the statute appear to indicate that § 15–106(b) only applies to LLPs. *See* 6 Del. C. § 15–103(b)(7) ("The partnership agreement may not ... [v]ary the law applicable to a limited liability partnership under § 15–106(b) of this title."). Commentary on the model RUPA also presumes that § 106(b) only applies to LLPs. *See* ROBERT HILLMAN, ALLAN VESTAL & DONALD WEIDNER, THE REVISED UNIFORM PARTNERSHIP ACT § 106, at authors' cmt. 3 (2009–2010). Section 15–106(b) reflects the fact that the gener-

al partnership statute serves as a gap filler for the limited partnership statute. *See* Revised Uniform Limited Partnership Act § 1105 ("[I]n any case not provided for in this Act, the provisions of the Uniform Partnership Act govern."); Delaware Revised Uniform Limited Partnership Act, 6 *Del. C.* § 17–1105 ("In any case not provided for in this chapter, the Delaware Uniform Partnership Law in effect on July 11, 1999 and the rules of law and equity, including the Law Merchant, shall govern.") (internal citations omitted). *See generally* ALAN R. BROMBERG & LARRY E. RIBSTEIN, BROMBERG AND RIBSTEIN ON PARTNERSHIP § 1.04(f) (2005).

**23.** Unif. P'ship Act § 106 cmt., 6 U.L.A. 88 (1997).

with the Delaware Secretary of State—that, when satisfied, indicate that a general partnership is to be governed by Delaware law. Absent compliance with both pre-conditions, a general partnership, Curran contends, will be governed by the law of the state where its operations are located, unless Delaware has other ties to the partnership that give it a claim to apply its law. The mere choice of law provision in the partnership agreement will not do so, or, at least more weakly, will not subject the partners of such a general partnership to the personal jurisdictional provision in § 15–114 of the DRUPA.

But, a full reading of the statute refutes this argument that a Delaware general partnership is governed by the DRUPA only if it registers with the State. Sections 15–112 and 15–113, which are unique to the DRUPA and have no counterparts under the model RUPA, make clear that the General Assembly envisioned the existence of both registered and unregistered Delaware general partnerships: § 15–112 governs service of process to registered Delaware general partnerships, and § 15–113 allows service on a partnership "which *has not* filed a statement of partnership existence [with the Secretary of State] . . . and which is formed under the laws of the State of Delaware *or* doing business in the State of Delaware." [24] Furthermore, § 15–114(b) of the DRUPA provides means for serving process on both registered and unregistered partnerships. If Curran's theory is correct, and general partnerships must register in order for the DRUPA to govern their affairs, then why would the General Assembly provide a means for service of process to unregistered partnerships?

Additionally, Curran's theory misreads § 15–106(c) as the *exclusive* means for applying Delaware law, when, as the legislative commentary indicates, it is only a *conclusive* means. [25] There are other possible grounds for applying Delaware law, namely § 15–106(a), which allows the law of the "jurisdiction governing the partnership agreement" to govern the relationship. Curran's theory impermissibly reads sub-section (a) out of § 15–106, and, therefore, it must be rejected.

The question is thus whether Delaware law applies under the traditional choice of law analysis that § 15–106(a) invokes. The Restatement (Second) of Conflict of Laws honors the parties' contractual choice of law except in limited circumstances:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction *and* there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. [26]

---

24. 6 Del. C. § 15–113 (emphasis added).

25. Del. S.B. 371 syn., 140th Gen. Assem. § 8 (2000) (indicating that the purpose of § 15–106(c) is "to provide a conclusive means to

assure application of Delaware law to a partnership agreement").

26. Restatement (Second) of Conflict of Laws § 187(2) (1971) (emphasis added).

Because the parties included in both the original 1990 JVA and the restated JVA a choice of law clause that expressly chooses Delaware law, the issue is whether an exception should be made to the Restatement's presumption that the parties' choice of law will be respected. That is, the question is whether (1) there is "no reasonable basis" for diverse parties in commerce, such as Total and Curran, to choose to form a general partnership governed by the DRUPA or (2) application of Delaware law would be "contrary to a fundamental policy of a state which has a materially greater interest than" Delaware in this matter.

I find no reason here to make such an exception to the parties' express choice of law decision. The parties' choice of Delaware law is emphatic. Not only did they restate the original 1990 agreement's choice of law provision in the 2004 agreement, but § 1.1 of both the original and restated JVAs also underscores their intentions to choose Delaware law. The language of § 1.1 is clear: "the Participants shall ... organize and associate themselves as partners in a general partnership ... *in, and in accordance with the laws of, the State of Delaware.*" [27] This contract language is an unequivocal indication, especially when repeated over the years in several amendments and restatements to the original agreement, of the parties' desire to govern their relationship by Delaware law. As important, the use of the word "in" is a clear and unmistakable expression of intent to make Cook Composites a Delaware domiciliary by constituting it *"in"* Delaware. Parties do this to make the domicile of an entity they are creating unquestionable. [28]

Furthermore, Delaware recognizes and respects the wealth-generating benefits that accrue when parties of diverse geographic origin, such as French-based Total and Missouri-based Curran, can voluntarily form an entity in Delaware (or another domicile of their choice) and have that domicile's law govern their relations: [29]

When a rational businessperson enters into an agreement establishing a trans-

---

27. Emphasis added.

28. Westlaw and internet searches indicate that the language "in and in accordance with the laws of" is frequently used in general partnership agreements. To hold that such language does not clearly indicate the drafters' intention of establishing a general partnership in the selected state would disrupt the settled expectations of the contracting parties and, therefore, undermine the smooth and predictable operation of commerce.

29. *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1047 (Del.Ch.2006) ("As a matter of commercial logic, it also makes sense that the Buyer and Seller would choose Delaware law to govern their relations. Although each was physically located in a different New England state and although the Company was headquartered in Ohio, the Buyer and Seller were operating in interstate commerce and wanted a reliable body of law to govern their relationship. They therefore chose the law of the state each had looked to in choosing their juridical home and whose law they wished to have govern their entities. By this means, Buckeyes, Quahogs, and Minutemen could come together using the common language of the Blue Hen, which each embraced as setting forth a reliable and fair set of rules for their commercial relationship."); *see also McDermott, Inc. v. Lewis*, 531 A.2d 206, 216 (Del.1987) (reasoning that application of a single state's law to govern a corporation's internal relations "serves the vital need for a single, constant and equal law to avoid the fragmentation of continuing, interdependent internal relationships" and that, "[w]ith the existence of multistate and multinational organizations, directors and officers have a significant right ... to know what law will be applied to their actions"). For a discussion of why non-resident parties often choose Delaware law in particular to govern the entities they form and their contractual relations, see Larry E. Ribstein, *Delaware, Lawyers, and the Contractual Choice of Law*, 19 Del. J. Corp. L. 999, 1012–14 (1994).

action or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to all disputes arising out of the transaction or relationship.... [S]uch a person would [not] reasonably desire a protracted litigation battle concerning only the threshold question of what law was to be applied.... Indeed, the manifest purpose of a choice-of-law clause is precisely to avoid such a battle.[30]

Therefore, the parties' clear intentions bolster the presumption under the Restatement (Second) of Conflict of Laws § 187(2) that choice of law provisions will be enforced.

Nevertheless, Curran argues that, despite the clear choice of Delaware law in the contract, Delaware law should not govern because this State has "no substantial relationship" to the parties or the transaction. To support this argument, Curran points to the following facts: Cook Composites has not registered with the Secretary of State; Cook Composites has no facilities and has never done business in Delaware; and the Joint Venture Agreement was negotiated and executed outside of Delaware. Because both Curran and Cook Composites are headquartered in the Kansas City area, Curran argues that Missouri has the more substantial relationship and, therefore, Missouri law should govern instead.

But, this argument understates Delaware's connection with the transaction and ignores the language of the Restatement calling for respect to be given to a choice of law provision where there is a "reasonable basis" for the parties to choose the law they did. The idea that a state's interests are only implicated by physical contacts is outmoded in all sorts of ways; one just has to think of how many businesses sell services without any physical contact with customers or even any delivery of a physical product. When parties choose to form a Delaware entity and utilize Delaware's system of laws and dispute resolution, they are bargaining for a valuable array of reliable services relating to their entity's internal affairs. That they choose to manufacture all the widgets the entity makes elsewhere and have its accounting done elsewhere does not render less important the legally-designated home of the entity for purposes of (1) its existence as an entity, and, most critically, (2) its relations among itself, its governing fiduciaries, and its investors.

■ Delaware's General Assembly believes the facilitation of commerce by this means is of great value. In 6 *Del. C.* § 2708, this public policy finds clear expression in the presumption that choosing Delaware law amounts to a substantial relationship with this State:

The parties to any contract, agreement or other undertaking, contingent or otherwise, may agree in writing that the contract, agreement or other undertaking shall be governed by or construed under the laws of this State, without regard to principles of conflicts of laws, or that the laws of this State shall govern, in whole or in part, any or all of their rights, remedies, liabilities, powers and duties if the parties, either as provided by law or in the manner specified in such writing are, (i) subject to the jurisdiction of the courts of, or arbitration in, Delaware and, (ii) may be served with legal process. *The foregoing shall conclusively be presumed to be a significant, material and reasonable relationship with this State and shall be en-*

30. *Abry Partners,* 891 A.2d at 1048 n. 25 (quoting *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, 1154 (1992)).

*forced whether or not there are other relationships with this State.*[31]

In light of this, Delaware courts will generally honor a contractually-designated choice of law provision so long as the jurisdiction selected is reasonable in light of the parties' contractual objectives.[32] Here, even though the parties do not have operations or sales in Delaware, they had good reason for choosing this State's law to govern the joint venture. Namely, by establishing a legal domicile for the partnership through the choice of law provision and § 1.1 in the Joint Venture Agreement, which indicates that the joint venture is Delaware general partnership, parties from two different nations found common ground—a shared language of commerce— to govern the internal affairs of the general partnership they were creating.[33]

■ Delaware also has a compelling policy interest in adjudicating this dispute in its court. Delaware's policy interest arises from the fact that this dispute directly involves the meaning of the agreement governing the partnership. In such a situation, the logic of the internal affairs doctrine, developed in regard to corporations,

applies with equal force in the context of a partnership. The internal affairs rule requires that the "internal affairs of a corporation ... are governed by the law of the corporation's domicile."[34] The principle behind this long-standing doctrine is that "only one state should have authority to regulate a corporation's internal affairs— matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders."[35] This rule fosters an "efficient and predictable corporate law."[36] The fact that Cook Composites is organized as a general partnership and not as a corporation does not alter this principle: general partnerships continue to serve an important role in the modern economy,[37] and this state has an interest, as in the corporate context, in ensuring that the law of partnerships is efficient and predictable.[38]

Nor has Curran argued that Missouri has a "materially greater interest" in adjudicating this dispute, or that adjudicating this dispute in Delaware will contravene one of Missouri's fundamental policies. Therefore, even though the parties did not register with Delaware's Secretary of

**31.** 6 Del. C. § 2708(a) (emphasis added).

**32.** *J.S. Alberici Const. Co. v. Mid–West Conveyor Co.,* 750 A.2d 518, 520 (Del.2000).

**33.** *Sample v. Morgan,* 935 A.2d 1046, 1058 n. 44 (Del.Ch.2007) ("[I]t is precisely for purposes of internal affairs that corporations— which are not physical beings—choose a legal domicile."); *see also Abry Partners,* 891 A.2d at 1049–50 (noting that parties "use [Delaware] law as a common language for their commercial relationships, particularly when those relationships involve interstate commerce and do not center in any material manner on the geography of any particular party's operational headquarters").

**34.** *Hynson v. Drummond Coal Co.,* 601 A.2d 570, 576 (Del.Ch.1991); *see also CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 89, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987) (citing Restatement (Second) of Conflict of Laws § 304

(1971)); *In re AXA Fin., Inc. S'holders Litig.,* 2002 WL 1283674, at *5 (Del.Ch. May 22, 2002).

**35.** *Edgar v. MITE Corp.,* 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982).

**36.** *In re Topps Co. S'holders Litig.,* 924 A.2d 951, 958 (Del.Ch.2007).

**37.** *See* Bromberg and Ribstein on Partnership § 1.01(c) (discussing the ongoing role of partnerships in the U.S. economy).

**38.** *See e.g. Assist Stock Mgmt. LLC v. Rosheim,* 753 A.2d 974, 981 (Del.Ch.2000) (finding in the LLC context that where "[t]he controlling agreement relies on Delaware law to delineate those rights and obligations ... the state has a compelling interest in the resolution of disagreements about them").

State as required under 15–106(c), they satisfied the requirements of § 15–106(a). Cook Composites is a Delaware general partnership.

### C. Whether The Jurisdictional Requirements Under § 15–114 Are Satisfied

■ Having found that the DRUPA governs the internal affairs of Cook Composites, I now address the question of whether Curran is subject to personal jurisdiction under the consent to jurisdiction provision of the DRUPA, which is set forth in § 15–114.

The relevant language in § 15–114 is as follows:

A partner ... of a partnership which is formed under the laws of the State of Delaware or doing business in the State of Delaware may be served with process in the manner prescribed in this section in all civil actions or proceedings brought in the State of Delaware involving or relating to the business of the partnership or a violation by the partner ... of a duty to the partnership or any partner of the partnership.[39]

Total argues that Curran's alleged breach of the agreement governing the partnership satisfies the "involving or relating to the business of the partnership" language in § 15–114. Curran's argument is that § 15–114 is not satisfied because this is only a routine contract dispute that does not relate to Cook Composites' core business, which involves selling composites.

Under the plain language of § 15–114, this dispute satisfies the requirements for exercising jurisdiction. As noted above, § 15–114 requires that a civil action "involv[e] or relat[e] to the business of the partnership or a violation by the partner ... of a duty to the partnership or any partner of the partnership." The present dispute—where Curran is alleged to owe a duty to pay money back to a partner because Curran was overpaid under a put provision in the partnership agreement— squarely falls within the plain language of the statute: the dispute here relates to a "violation by the partner of a duty to ... any partner of the partnership." Furthermore, a disagreement over a partnership's controlling agreement is not a routine dispute over a contract ancillary to the partnership's business. Rather, such a dispute over the meaning of the partnership's governing instrument, which specifies how the partnership will be managed, clearly "involv[es] or relat[es] to the business of the partnership." Therefore, the DRUPA provides a statutory basis for this court to exercise jurisdiction over Curran.

The interpretation of consent to jurisdiction provisions in analogous statutes corroborates this conclusion. When applying Delaware's corporate director and officer consent statute, 10 *Del. C.* § 3114, and similar statutes, our courts have been careful to make sure that the literal application of a statute's consent to jurisdiction provision does not yield any unpredictable results. To that end, § 3114 and statutes like it have been interpreted as applying fairly only when the action "involv[es] violations of the Delaware General Corporation Law ..., *the corporate charter and bylaws*, and breaches of the fiduciary duties owed to the corporation and its

---

39. Section 15–114, like other consent to jurisdiction statutes such as §§ 17–109 of the LLP statute and 18–109 of the LLC statute, provides a basis for specific, not general, personal jurisdiction over defendants regarding certain types of disputes. This conclusion is reached when one reads § 15–114 along side § 15–115, which indicates that a partnership "shall not be deemed to be doing business in the State of Delaware solely by reason of its being a partner in a domestic partnership." In other words, § 15–115 clarifies that nothing in the DRUPA, including § 15–114, is intended to confer general personal jurisdiction over non-resident partners of a general partnership.

stockholders."[40] The circumstances here fall within those categories because the present controversy involves a dispute between the statutorily-relevant fiduciaries of the entity (in this case, the partners of the general partnership) over the governing instrument of the entity (*i.e.*, the partnership agreement).[41] Therefore, the key principle emerging from the cases interpreting § 3114 and similar statutes is that consent to jurisdiction provisions may be used to subject a fiduciary to the jurisdiction of the Delaware courts for disputes over the meaning of and compliance with a Delaware entity's governing documents.

As for the necessary constitutional inquiry,[42] I find that, because § 15–114 provides a proper statutory basis for this court's extension of personal jurisdiction, Curran's due process rights have not been violated. Here, satisfaction of § 15–114's requirements obviates any due process concerns because this dispute concerns Cook Composites' internal affairs—*i.e.*, Curran is not being sued regarding matters unrelated to its participation as a general partner in a Delaware general partnership. The very reason § 15–114 was drafted as it was, and why statutes like it and § 3114 are held to apply only to claims directly involving the internal affairs of an entity or that are closely related to other internal affairs claims, is to ensure that the statute is employed constitutionally.[43] For the reasons discussed above,

**40.** *Corporate Prop. Assocs. 14 Inc., v. CHR Holding Corp.*, 2008 WL 963048, at *10 (Del. Ch. Apr. 10, 2008) (citing *Canadian Commercial Workers Indus. Pension Plan v. Alden*, 2006 WL 456786, at *11 (Del.Ch. Feb. 22, 2006); *HMG/Courtland Props., Inc., v. Gray*, 729 A.2d 300, 304–05 (Del.Ch.1999)) (emphasis added).

**41.** *See also Assist*, 753 A.2d at 981 (reasoning that the requirement in § 18–109 of the LLC statute that the claim relate to the business of the entity was met because a failure to resolve a dispute over the meaning of the LLC agreement would seriously affect the LLC's business); *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *12 (Del.Ch. Mar. 31, 2003) (holding that the dispute related to the business of the LLC and fell within the terms of § 18–109(a) of the LLP statute because a dispute over buy out provisions in the LLC agreement "touch[ed] on important aspects of the Companies' governance and basic nature"); *see generally* DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 3.05[a][2], at 3–67 (2009) ("[T]he [DRUPA, DRULPA, the LLC Act, and the Statutory Trust Act] would likely be deemed applicable to suits involving alleged violations of *contractual duties pursuant to a partnership agreement.*") (emphasis added).

**42.** *Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) ("[A]ll assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* [*Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] and its progeny.").

**43.** *See Hana Ranch, Inc. v. Lent*, 424 A.2d 28, 30–31 (Del.Ch.1980) (holding that, in order to ensure that § 3114 functioned in a manner consistent with due process, personal jurisdiction over a non-resident director may only be premised upon § 3114 where the action against the director is related to acts performed in his or her capacity as a director); *Ryan v. Gifford*, 935 A.2d 258, 268–69 (Del. Ch.2007) (following *Hana Ranch*, and explaining that jurisdiction could only be exercised over non-resident directors if the plaintiffs had alleged conduct or acts performed in the directors' official capacities); *Armstrong v. Pomerance*, 423 A.2d 174, 175–79 (Del. 1980) (finding that jurisdiction could be exercised over non-resident directors under § 3114 which "authorizes jurisdiction only in actions which are inextricably bound up in Delaware law and where Delaware has a strong interest in providing a forum for redress of injuries inflicted upon or by a Delaware domiciliary"); WOLFE & PITTENGER § 3.05[a][2] ("[M]indful of the due process limitations on the exercise of personal jurisdiction over nonresident directors as outlined in the United States Supreme Court's holding in *Shaffer*, Delaware courts tend to take a narrow view of the scope of Section 3114.").

Curran should not be surprised that a controversy over the interpretation of the governing document of Cook Composites, a Delaware general partnership, provides a basis for adjudicating that dispute in this court. Curran bargained to create and become a partner in a Delaware general partnership. Moreover, Curran's self-interest in avoiding its bargain with Total is outweighed by Delaware's strong public interest, as evidenced in § 15–114, in adjudicating internal affairs disputes between partners in its courts. Absent a willingness to adjudicate such disputes when parties like Curran have voluntarily agreed to jurisdiction here, Delaware courts would undercut the efficiency-generating predict-ability that comes from forming a Delaware entity because parties could not rely on having access to our courts. Therefore, exercising jurisdiction over Curran in no way offends its due process rights, and any modest incremental burden it may incur by having to litigate this case here, rather than in Missouri, does not justify a stay of this first-filed action.

## IV. *Conclusion*

For the foregoing reasons, the Defendants' motion to dismiss is denied.