NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1482
_____

COFACE COLLECTIONS NORTH AMERICA INC.

v.

WILLIAM J. NEWTON,
Appellant
_____

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-11-cv-00052)
District Judge: Honorable Leonard P. Stark
_____

Submitted Under Third Circuit LAR 34.1(a)
May 27, 2011

Before: McKEE, Chief Judge, SCIRICA and RENDELL, Circuit Judges

(Opinion Filed: June 6, 2011)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Defendant William J. Newton appeals from an order of the District Court of

Delaware granting a preliminary injunction to plaintiff Coface Collections North

America, Inc. ("Coface") restricting Newton from owning, operating, or participating in

any business "similar or competitive to" Coface. Newton argues that, under Louisiana

law, the non-compete clause in the Asset Purchase Agreement ("the Agreement") between him and Coface should not be enforced. He contends that Louisiana law should govern the dispute between him and Coface, despite a choice-of-law clause in the Agreement providing that Delaware law would govern the terms of the Agreement, including the non-compete provision. We will affirm.

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1332. We have jurisdiction over this interlocutory appeal of a grant of a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1).

I.

Coface, a Delaware corporation engaged in the business of collections and receivables management, entered into an Asset Purchase Agreement with William Newton, the owner and operator of Newton & Associates LLC, a nationwide debt collection business, to transfer to Coface the majority of Newton & Associates' assets and all the "proprietary rights" of Newton's business, including goodwill and all rights to the corporate names associated with Newton's business, for a "significant sum of money."[1]

The Agreement contained several restrictive covenants, including a non-compete provision providing that Newton would not, for a period of five years following the sale:

---

[1] Pursuant to disclosure restrictions in the Agreement, the specific purchase price for Newton's business has not been disclosed. Coface did not include the price in its brief and, it attached a redacted copy of the Agreement to the complaint it submitted to the District Court. At the preliminary injunction hearing, Newton's counsel consented to representing the amount Coface paid for Newton's business as a "significant sum."

2

(1) compete with Coface, solicit, or interfere with Coface's relationships with Coface's employees and customers; or (2) include the name "Newton" in the business title of any entity in competition with Coface. The Agreement also stated that, in the event Newton breached any of the restrictive covenants, Coface would be irreparably harmed and entitled to, among other things, injunctive relief. Most importantly, the Agreement expressly provided that Delaware law would govern its terms, including the non-compete provision.

After the Agreement was executed and the sale of Newton's business to Coface completed, Newton served as President of Coface, but he voluntarily left this position in December 2008. After 2008, he continued to provide consulting services through his own company, Q&A, LLC, allegedly acquiring additional confidential and proprietary information regarding Coface's business during this time. Coface finally ended the consulting relationship effective October 3, 2010.

On about January 5, 2011, Newton formed, and began actively operating, a new company, "Newton, Clark & Associates, LLC" ("Newton Clark"). Around this time, he posted on the career networking website LinkedIn that he was "Chairman of the Board" at "Newton Clark" and on Facebook that his "non-compete ends on 12/31/2010 & I have decided that the USA needs another excellent, employee oriented Commercial Collection Agency." The posts encouraged experienced professionals to contact him or Clark Pellegrin, also a former Coface employee, to apply for a position with Newton Clark.

Since the inception of Newton Clark, Newton has allegedly violated several of the express terms of the Agreement, including the restrictive covenants. He has admitted to,

3

among other things,[2] operating a business directly in competition with Coface. In response, Coface sought preliminary injunctive relief in the District Court of Delaware to enforce the non-compete provision.

Before the District Court, Newton admitted to or conceded the following facts, which remain undisputed: that Coface paid a significant sum of money under the Agreement to acquire substantially all the assets of Newton's business, and, in doing so, secured from Newton the restrictive covenants contained in the Agreement; the restrictive covenants contain the non-compete provision; and, beginning on or about January 1, 2011, Newton operated a restricted business in violation of the express terms of the non-compete provision. Most importantly, Newton conceded that the Agreement contains a choice-of-law provision, pursuant to which Newton agreed that Delaware law would govern the Agreement's terms, including the non-compete provision, and that, under Delaware law, the non-compete provision would be enforceable against Newton. The

---

[2] Specifically, Newton has hired several employees of Coface, all of whom quit their positions in the past nine months and who, pursuant to the terms of their respective agreements with Coface, are currently prohibited from (1) competing with Coface; (2) soliciting Coface employees and customers or otherwise interfering with these and other Coface business relationship; or (3) using or disclosing Coface's confidential and proprietary information without authorization. Since January 1, 2011, Newton has sent friend requests on Facebook to current Coface employees, asking them to view the posted notice and solicitations described above. In addition, beginning on November 1, 2010, and via at least 25 electric transmissions from Coface's New Jersey office, internal Coface production reports were sent to Newton's personal email account. These reports, Coface alleges, are proprietary and highly valuable to a competitor because they: (1) show individual collector production; (2) the amount of business each collector received; and (3) the amount of fees each collector has earned during the month to date.

4

provision, if enforced, would require Newton to cease his restricted business activities and entitle Coface to the requested interim injunctive relief.[3]

Following a hearing, the District Court granted Coface's motion for injunctive relief on February 18, 2011. In a decision issued from the bench, the District Court found that Delaware law governed, and, under Delaware law, Coface was likely to succeed on the merits and suffer irreparable harm in the absence of an injunction.

## II.

In reviewing a district court's decision to grant or deny a preliminary injunction, we review the district court's findings of fact for clear error, conclusions of law *de novo*, and the ultimate decision to grant or deny the preliminary injunction for an abuse of discretion. *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

We have held that it is permissible for a district court to grant the "extraordinary remedy" of a preliminary injunction only if: "(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *Nutrasweet Co. v. Vit-Mar Enter.*, 176 F.3d 151, 153 (3d Cir. 1999) (internal citation omitted). If plaintiff fails to establish any of the elements

---

[3] Specifically, section 11.5 of the Agreement, titled "Controlling Law; Integration," provides:

> This Agreement shall be governed by and construed and enforced in accordance with the internal Laws of the State of Delaware without reference to the State of Delaware's choice of Law rules. This Agreement supersedes all negotiations, agreements, and understandings among the parties with respect to the subject matter hereof. This Agreement, each other agreement to be executed in connection herewith between any of Buyer, the Sellers or the Majority Stockholders, constitutes the entire agreement among the parties hereto.

in its favor, a preliminary injunction is inappropriate. *Id.* (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)).

The District Court found that Coface met each of the elements of this test. The primary element in question before the trial court, and now, is whether Coface is likely to succeed on the merits of its claim that Newton violated the non-compete clause in the Agreement. This depends on whether Delaware law should apply to the Agreement or, as Newton contends, Louisiana law should apply. Under Louisiana law, the non-compete provision would not be enforceable.[4] Under Delaware law, it would be.[5] We agree with the District Court that the Asset Purchase Agreement, including the choice-of-law provision, was voluntarily entered into by both parties and was enforceable. Indeed, Newton voluntarily sold his business to Coface for a substantial sum of money and voluntarily agreed to be bound by Delaware law. Thus, Delaware law should apply pursuant to the clear and unambiguous choice-of-law provision contained in Section 11.5 of the Agreement. Accordingly, we find that the District Court did not abuse its discretion in ruling that Coface is likely to succeed on the merits of its claim for injunctive relief against Newton.

---

[4] Specifically, Newton points to La. R.S. 23:921(B), which permits enforcement of non-compete provisions against the seller in the context of a sale of a business, but only for two years from the date of sale.

[5] Under Delaware law, covenants not to compete with reasonable time and geographical restrictions are enforceable, though not "mechanically." *See McCann Surveyors, Inc. v. Evans*, 611 A.2d 1, 3-4 (Del. Ch. 1987) ("[C]ovenants restricting future employment, in order to be valid . . . must be determined . . . to be reasonably limited geographically and with respect to the restriction on time," and must "foster a legitimate economic interest of the plaintiff" (citation omitted)). Newton does not challenge the enforceability of the covenant not to compete under Delaware law.

We note at the outset, as the District Court did, that it is only in rare circumstances that Delaware courts do not honor the choice-of-law provisions agreed to by parties in a binding contract. *See Abry Partners V, L.P. v. F & W Acquisition LLP*, 891 A.2d 1032, 1048 (Del. Ch. 2006) ("When parties have chosen a state's contract law to govern their contract, it is illogical to assume that they wished to have the enforceability of that contract judged by another state's law."). Nonetheless, as Newton urges the application of a different state's law, the District Court acted properly in undertaking the choice-of-law analysis normally conducted by Delaware courts.[6]

We agree with the District Court that Restatement (Second) of Conflict of Laws, Section 187 provides the framework for determining whether the choice-of-law provision contained in § 11.5 of the Agreement should be given effect, and the parties do not argue otherwise. Under § 187, a choice-of-law clause will be enforced unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (1971).[7]

---

[6] As a federal court exercising diversity jurisdiction, we apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941).

[7] Delaware courts consistently apply § 187 in determining whether to enforce a choice-of-law provision. *See Total Holdings USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 881 (Del. Ch. 2009); *Abry*, 891 A.2d at 1047.

The District Court correctly concluded that neither of the § 187 exceptions applies here. As to the first, the District Court found that Delaware has a substantial relationship to the transaction because it is the location where Coface is incorporated. We agree. "When parties choose to form a Delaware entity and utilize Delaware's system of laws and dispute resolution, they are bargaining for a valuable array of reliable services relating to their entity's internal affairs." *Total Holdings USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 883 (Del. Ch. 2009). That physical contacts exist elsewhere "does not render less important the legally-designated home of the entity for purposes of (1) its existence as an entity, and most critically, (2) its relations among itself, its governing fiduciaries, and its investors." *Id.* The idea that a party's incorporation in the state of Delaware establishes a significant connection to the state is embodied in 6 Del. C. § 2708, which provides, in relevant part:

> The parties to any contract, agreement or other undertaking, contingent or otherwise, may agree in writing that the contract, agreement or other undertaking shall be governed by or construed under the laws of this State, without regard to principles of conflicts of laws, or that the laws of this State shall govern, in whole or in part, any or all of their rights, remedies, liabilities, powers and duties if the parties, either as provided by law or in the manner specified in such writing are, (i) subject to the jurisdiction of the courts of, or arbitration in, Delaware and, (ii) may be served with legal process. *The foregoing shall conclusively be presumed to be a significant, material and reasonable relationship with this State and shall be enforced whether or not there are other relationships with this State.*

6 Del. C. § 2708(a) (emphasis added).

In light of § 2708, Coface's incorporation in Delaware provides an adequate substantial relationship with the state of Delaware. Accordingly, the District Court did not err in concluding that the first § 187 exception does not apply.

8

As to the second exception, we begin our analysis, as the District Court did, by asking whether Louisiana has a "materially greater interest" in the particular issue at hand – determining the effect of the non-compete clause – than Delaware does.[8] The District Court determined that no state has a materially greater interest in the issue than Delaware, because Coface was incorporated under Delaware law and does business nationally, and because, pursuant to § 2708, Delaware is presumed to have a significant interest in enforcing choice-of-law clauses that choose Delaware law to govern. It acknowledged that Louisiana has a substantial interest in the issue of whether the covenant not to compete should be enforced; indeed, Newton is a citizen of Louisiana, he signed the Agreement in Louisiana, and his competing business is headquartered there. However, the District Court concluded, and we agree, that these geographical contacts do not support the conclusion that Louisiana has a "materially greater interest" in determining the effect of the covenant not to compete. This is not a case where both parties are Louisiana citizens. As the District Court emphasized, Coface is a national company. Moreover, Delaware has a substantial interest in enforcing this voluntarily negotiated contract clause that explicitly designates Delaware law to govern. That interest is not overcome by any other state's materially greater interest. *See Abry*, 891 A.2d at 1049-50

---

[8] In asserting that the second § 187 exception does not apply here, Coface first argues that enforcing the non-compete provision would not offend any fundamental policy in Louisiana. Section 187 suggests that the threshold question is whether a state other than the one designated in a choice-of-law clause has a materially greater interest in determining the particular issue. Since we agree with the District Court that Louisiana does not have a materially greater interest in the transaction than Delaware, it is not necessary for us to determine whether applying Delaware law contradicts a fundamental public policy in Louisiana.

9

("[Delaware] citizens ought to be able to use our law as a common language for their commercial relationships, particularly when those relationships involve interstate commerce and do not center in any material manner on the geography of any particular party's operational headquarters."). Accordingly, we agree with the District Court that the § 187(2) exception does not apply here.

Since we conclude that Louisiana does not have a materially greater interest than Delaware in applying its law here, we need not reach the question of whether applying Delaware law would be contrary to a fundamental policy in Louisiana. However, we note that the high threshold for establishing such a "fundamental policy" in Louisiana would likely not be met here. As the District Court noted, other federal courts, including a Louisiana district court, have found that enforcing a non-compete provision under the contractually designated law of another state would not violate a fundamental policy of Louisiana. *See Zimmer, Inc. v. Sharpe*, 651 F. Supp. 2d 840 (N.D. 2009) (honoring parties' contractual choice of Indiana law over Louisiana law and noting that just because application of Louisiana law would likely change the outcome in the case, this was not sufficient to "disregard the [parties'] choice of law provision under the public policy exception"); *MedX Inc. of Fla. v. Ranger*, 780 F. Supp. 398 (E.D. La. 1991) (upholding under Florida law a restrictive covenant made in conjunction with a sale of business and concluding that the application of Florida law did not violate a strong public policy of Louisiana). In *Zimmer*, the district court explained that, while Louisiana has a strong policy disfavoring noncompetition agreements between employers and employees, its courts do not categorically refuse to enforce such agreements and, in fact, have shown a

10

willingness to reform such agreements by striking invalid portions. 651 F. Supp. 2d at 851-52. A stronger showing is required to establish that Louisiana has a "fundamental policy" sufficient to overcome the parties' choice of law.

As the Delaware Chancery Court persuasively articulated in *Abry*, "[t]o enter into a contract under Delaware law and then tell the other contracting party that the contract is unenforceable due to the public policy of another state is neither a position that tugs at the heartstrings of equity nor is it commercially reasonable." 891 A.2d at 1050. As parties to the Asset Purchase Agreement, Newton and Coface made a voluntary choice of law to govern their contract. Neither exception to § 187's rule that we must enforce parties' choice of law provisions applies here. Thus, we honor the parties' choice of Delaware law.

Newton also argues that the Full Faith and Credit Clause of the United States Constitution requires the application of Louisiana law. That argument is predicated on Newton's contention that Delaware does not have "significant contacts" with the parties or the transaction, which we have already rejected. Moreover, Newton offers no support for this argument beyond proclaiming that Delaware law should not be able "to rule the world" just because the parties adopted it in their contract. We agree with the District Court that this constitutional argument is meritless.

Based on our conclusion that Delaware law applies, we conclude that the covenant not to compete is enforceable and that Coface is likely to succeed on the merits. Accordingly, we affirm the District Court's grant of Coface's preliminary injunction.