**ENHANCED NETWORK SOLUTIONS GROUP, INC., Appellant–Defendant,**

**v.**

**HYPERSONIC TECHNOLOGIES CORP., Appellee–Plaintiff.**

**No. 02A03–1011–PL–609.**

Court of Appeals of Indiana.

June 30, 2011.

Transfer Dismissed Sept. 26, 2011.

Michael H. Michmerhuizen, Anthony M. Stites, Barrett & McNagny LLP, Fort Wayne, IN, Attorneys for Appellant.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Enhanced Network Solutions Group, Inc. (ENS), appeals the trial court's order granting Appellee–Plaintiff's, Hypersonic Technologies Corporation (Hypersonic), request for declaratory judgment that Hypersonic did not violate the terms of the Sub–Contractor Agreement.

We affirm.

### ISSUE

ENS presents one issue on appeal, which we restate as: Whether the trial court erred when it found that Hypersonic did not solicit or induce an employee of ENS to terminate his employment in violation of the terms of the Sub–Contractor Agreement entered into between Hypersonic and ENS.

### FACTS AND PROCEDURAL HISTORY

Hypersonic, based in Fort Wayne, Indiana, is engaged in advanced software engineering and the creation of new software. ENS is in the business of modifying existing software. On October 19, 2009, the two companies entered into a SubContractor Agreement (Agreement) through which ENS would acquire certain services from Hypersonic to serve ENS's own clients. Pursuant to the terms of the Agreement, if Hypersonic and ENS successfully bid on a joint project, ENS would authorize Hypersonic to act as a subcontractor and specify its services by execut-

ing an engagement letter. Included in the Agreement is the following clause:

11.5 **Employee Protection.** During the term of this Agreement and for a period of twelve (12) months from the date of effective date of its termination, unless mutually agreed to in writing otherwise the Parties (including any successor-in-interest or related company) shall refrain from soliciting or inducing, or attempting to solicit or induce, any employee of the other Party in any manner that may reasonably be expected to bring about the termination of said employee toward that end and, in the event of a breach of this clause, the party in breach shall pay to the party not in breach the sum equivalent to twelve (12) months salary of the employee in question.

(Appellant's App. p. 67). The parties never bid successfully on a project and on June 21, 2010, Hypersonic terminated the Agreement.

At some point during the parties' contractual relationship, Hypersonic posted an open position for an outside sales representative on its LinkedIn webportal, a social internet site that connects businesses and people. The LinkedIn job posting was available for viewing by the people who belonged to a certain public group within LinkedIn. Robert Dobson (Dobson), a field representative for ENS, noticed the job posting. After reading the job description, Dobson informed Shawn Mettler (Mettler), President of Hypersonic, that he was interested in applying for the position and inquired whether the posting was still open. Allen Renfrow (Renfrow), Hypersonic's owner, and Mettler met Dobson for lunch in April of 2010.

During the lunch meeting, Renfrow and Mettler explained what the position entailed; they did not make Dobson an offer at that time. However, they continued to talk and all three met again approximately a week after the initial lunch meeting. At the second meeting, Dobson conveyed his terms of compensation and what he was looking for in a new position. Hypersonic made an offer of employment that satisfied all Dobson's requests. He accepted the offer and started working for Hypersonic as Executive Director of Sales on May 5, 2010.

On June 22, 2010, Hypersonic filed a complaint against ENS for declaratory judgment seeking a decision as to the enforceability of the Agreement. On August 4, 2010, ENS filed its answer, together with a third party complaint against Dobson. On November 16, 2010, the trial court conducted a hearing on Hypersonic's complaint. Two days later, on November 18, 2010, the trial court issued its order, concluding that "Hypersonic did not solicit, induce, or attempt to solicit or induce Dobson to terminate his employment with ENS." (Appellant's App. p. 9).

ENS now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

ENS contends that the trial court abused its discretion when it concluded that Hypersonic did not breach the terms of the Agreement when it hired Dobson. Because the trial court entered findings and conclusions, we determine whether the evidence supports the trial court's findings and we determine whether the findings support the judgment. *Infinity Products, Inc. v. Quandt,* 810 N.E.2d 1028, 1031 (Ind.2004). We will not disturb the trial court's findings or judgment unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the

conclusions which rely upon those findings. *Id.* We consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id.*

■ Additionally, we note that Hypersonic did not file an appellee's brief. When an appellee does not submit a brief, an appellant may prevail by establishing a *prima facie* case of error, *i.e.*, error at first sight. *Elrod v. Brooks*, 910 N.E.2d 231, 233 (Ind.Ct.App.2009). By using a *prima facie* error standard, this court is relieved of the burden of developing arguments for the appellee. *Id.*

■ Generally, the construction of a written contract is a question of law. *See City of Lawrenceburg v. Milestone Contractors, L.P.*, 809 N.E.2d 879, 883 (Ind.Ct. App.2004), *trans. denied.* However, if the terms of a written contract are ambiguous, it is the responsibility of the trier of fact to ascertain the facts necessary to construe the contract. *Id.* In ascertaining the contract's clarity or lack thereof, we consider the whole document, not just the disputed language. *Id.* Construction of contract language that would render any words, phrases, or terms ineffective or meaningless should be avoided. *Id.* In its interpretation of the contract, the court should attempt to determine the parties' intent when entering a contract from their expressions within the four corners of the written instrument. *Id.*

Turning to the non-solicitation clause included in the Agreement, we note that the Agreement lacks a definition of the pertinent terms "solicit" and "induce." *See* Appellant's App. p. 67. Even though the terms are routinely used by Indiana courts, no case law discusses their precise meaning. In determining the ordinary meaning of terms, courts may look at dictionaries for assistance. *See Ind. Ins. Co. v. Dreiman*, 804 N.E.2d 815, 820 (Ind.Ct. App.2004), *reh'g denied, trans. denied.* As such, Blacks's Law Dictionary defines solicitation as "[t]he act or an instance of requesting or seeking to obtain something; a request or petition;" inducement is described as "[t]he act or process of enticing or persuading another person to take a certain course of action." *See* BLACK'S LAW DICTIONARY 1427, 799 (8th ed.2004).

■ Based on these definitions we cannot say that Hypersonic solicited or induced Dobson to terminate his position with ENS and to accept a job opening at Hypersonic in breach of the non-solicitation clause of the Agreement. The record clearly supports that Dobson made the initial contact with Hypersonic after reading the job posting on a publicly available portal of LinkedIn. In other words, Dobson solicited Hypersonic. After an initial lunch meeting during which Renfrow, Mettler, and Dobson discussed the general content of the position, Dobson informed Hypersonic of his terms of compensation and what he was looking for in a new position during a second meeting. Hypersonic then responded to Dobson with an offer of employment that satisfied all Dobson's requests. As such, Dobson initiated all contact and requested terms of employment satisfactory to him, Hypersonic merely responded to his requests; it did not solicit or induce. Pursuant to the terms of the Agreement, Hypersonic cannot solicit applications but the language does not prohibited Hypersonic from receiving and considering applications from employees of ENS.

Nevertheless, ENS now contends that despite the fact that Dobson initiated the contacts with Hypersonic, Hypersonic solicited Dobson when it continued talking with Dobson. In support, ENS refers us to out-of-state case law which stands for the premise that in appropriate circumstances, a person may solicit another's

business regardless of who initiates the meeting. *See Scarbrough v. Liberty National Life Insurance Co.*, 872 So.2d 283 (Fla.Ct.App.2004). Besides being merely persuasive, we find this case law inapposite to the situation at hand. In *Scarbrough*, after being initially contacted by a former client, Scarbrough, an insurance agent, proactively provided the client with a comparison between the benefits and premiums offered by its former insurance company and the insurance company Scarbrough was currently employed by. *Id.* at 284–85. The Florida Court of Appeals recognized that being "proactive" was included within the term "solicit." *See id.* at 285. In the case at bar, however, all major steps were initiated and taken by Dobson: he commenced the conversations about the position and he conveyed his terms of employment to Hypersonic. Hypersonic merely followed where Dobson led. Therefore, we conclude that Hypersonic did not breach the non-solicitation clause of the Agreement.[1]

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly found that Hypersonic did not solicit or induce an employee of ENS to terminate his employment.

Affirmed.

DARDEN, J., and BARNES, J., concur.

---

1. In a footnote, ENS asserts that our definition of solicitation might invite "unsavory conduct in future cases." (Appellant's App. p. 11). Specifically, ENS gives the example that "with a proverbial (or perhaps literal) wink and a nod, Hypersonic could have told Dobson that there was a vacant position, that Dobson was a perfect fit, but unfortunately Hypersonic was absolutely barred by the Agreement from initiating discussions[.]" (Appellant's App. p. 11). We disagree. This conduct is easily preventable by including a definition of solicitation in the Agreement which encompasses the prohibition of accepting or considering applications from the other party's employees.