# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

*Bankers Life & Casualty Co. v. American Senior Benefits LLC*,
2017 IL App (1st) 160687

</div>

| | |
|---|---|
| Appellate Court Caption | BANKERS LIFE AND CASUALTY COMPANY, Plaintiff-Appellant, v. AMERICAN SENIOR BENEFITS LLC, GREGORY P. GELINEAU, VAN LaFERMINE, ALLAN PARLIER, CHRISTOPHER VALENTINE, SCOTT FAJNOR, and KEVIN HEISER, Defendants (Gregory P. Gelineau, Defendant-Appellee). |
| District & No. | First District, First Division<br>Docket No. 1-16-0687 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | June 26, 2017<br><br>July 21, 2017<br>August 7, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, 15-CH-12601; the Hon. Kathleen G. Kennedy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David K. Haase and Todd M. Church, of Littler Mendelson, PC, of Chicago, for appellant.<br><br>Joseph P. Kincaid, Catherine B. Weiler, Ronald L. Wisniewski, and Troy M. Sphar, of Swanson, Martin & Bell, LLP, of Chicago, for appellee. |

JUSTICE SIMON delivered the judgment of the court, with opinion. Presiding Justice Connors and Justice Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Bankers Life and Casualty Company (Bankers Life) appeals a circuit court order granting summary judgment in favor of defendant Gregory P. Gelineau in a breach of a noncompetition agreement. On appeal, Bankers Life argues that (1) several issues of material fact precluded a summary judgment disposition and (2) the circuit court abused its discretion when denying Bankers Life's request for additional discovery. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3     Bankers Life is an Illinois company that sells insurance and financial products, such as long-term care insurance life annuities and Medicare supplement insurance, primarily to seniors. Bankers Life sells its products through employees and independent contractors and also employs individuals in management-level positions.

¶ 4     In 2004, Bankers Life hired Gelineau as the branch sales manager responsible for its Warwick, Rhode Island, office. In 2006, Gelineau signed an employment agreement with Bankers Life that contained certain noncompetition provisions, stating in relevant part:

> "During the term of this Contract and for 24 months thereafter, within the territory regularly serviced by the Manager's branch sales office, the Manager shall not, personally or through the efforts of others, induce or attempt to induce:
>
> (a) any agent, branch sales manager, field vice president, employee, consultant, or other similar representative of the Company to curtail, resign, or sever a relationship with the company;
>
> (b) any agent, branch sales manager, field vice president or employee of the Company to contract with or sell insurance business with any company not affiliated with the company, or
>
> (c) any policyholder of the company to relinquish, surrender, replace, or lapse any policy issued by the company."

¶ 5     Gelineau's employment with Bankers Life ended on or about January 15, 2015. Gelineau was subsequently hired by American Senior Benefits LLC (ASB) as its senior vice president. ASB is an insurance company generally regarded as a competitor of Bankers Life. According to Bankers Life, ASB hired and retained many former Bankers Life employees.

¶ 6     On August 21, 2015, Bankers Life filed its complaint alleging breach of contract against Gelineau and six other defendants: ASB, Van LaFermine, Christopher Valentine, Allan Parlier, Scott Fajnor, and Kevin Heiser. At issue in this appeal are the allegations against defendant Gelineau. In its breach of contract count against Gelineau, Bankers Life alleged that, after joining ASB, Gelineau recruited or attempted to recruit Bankers Life employees and agents from the Warwick, Rhode Island, office by sending LinkedIn requests to connect to three employees, Richard Connors, Sally Levesque, and Russell Dolan. According to Bakers

Life, its employees "would then click onto [Gelineau's] profile [and] would see a job posting for ASB." Bankers Life alleged that a second method of recruiting that Gelineau used was to direct his subordinates at ASB, including Mark Medeiros, to contact Bankers Life agents and employees for the purpose of inducing them to leave Bankers Life and join ASB.

¶ 7        Gelineau filed a motion for summary judgment stating that he did not breach any provisions of his contract: he did not recruit any Bankers Life agents or employees in his geographic area, and he did not direct Mark Medeiros or any other ASB employee to recruit Bankers Life employees or agents in that geographic area. He also attested that he never used LinkedIn to send direct messages to Bankers Life agents or employees in the Warwick, Rhode Island, area regarding ASB or any other possible professional opportunities. Instead, Gelineau stated, all of the individuals on his e-mail contact list were sent LinkedIn generic e-mails asking them to form a professional connection on social media.

¶ 8        Bankers Life filed its opposition to Gelineau's motion claiming that Gelineau, not LinkedIn, was responsible for sending the LinkedIn "endorsement emails." Bankers Life attached two affidavits to its response. One affidavit came from Peter Wilkins, Bankers Life's vice president, where he stated that Bankers Life would need additional discovery from LinkedIn, from Medeiros, and from Gelineau regarding their alleged recruiting efforts. The other affidavit came from Richard Connors where he stated that he received LinkedIn invitations from both Gelineau and Medeiros and that several unnamed Bankers Life employees received similar requests to connect on LinkedIn from both Gelineau and Medeiros. Connors also indicated that he saw a job posting for a position with ASB on Gelineau's LinkedIn profile page.

¶ 9        During the hearing on the motion for summary judgment, Bankers Life argued that several text messages exchanged between Gelineau and another ASB employee, Van LaFermine, indicated that Gelineau used LinkedIn as a recruiting tool. Gelineau texted that he "will linkin [*sic*] with agents from their offices and see where it leads" and that "maybe you should link in [*sic*] and see if he bites at all." None of the potential recruits mentioned in the text messages worked in the Warwick, Rhode Island, area.

¶ 10        Following oral arguments, Gelineau submitted a supplemental affidavit from Mark Medeiros where he stated that Gelineau asked him not to recruit Bankers Life agents or employees in the Warwick, Rhode Island, area. Medeiros indicated that he contacted a small number of Bankers Life employees and agents, including someone named Christopher Fernandez in February 2015, before he started working at ASB. Subsequently, Bankers Life submitted an affidavit from Fernandez claiming that he received an invitation to connect on LinkedIn and that Medeiros sent Fernandez a recruiting e-mail sometime in the spring of 2015.

¶ 11        The circuit court granted Gelineau's motion for summary judgment holding that, after reviewing all the submissions, Bankers Life failed to identify any solicitation or other breach of contract by Gelineau. The court further ordered that the judgment be made immediately final and appealable pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). This appeal follows.

¶ 12                                        ANALYSIS

¶ 13        We review the grant of summary judgment *de novo*. *Cook v. AAA Life Insurance Co.*, 2014 IL App (1st) 123700, ¶ 24. Summary judgment should only be granted if a strict construction against the movant of all the pleadings, depositions, admissions, and affidavits on file

establishes no genuine issue of material fact and the entitlement of the moving party to judgment as a matter of law. *Board of Education of Township High School District No. 211 v. TIG Insurance Co.*, 378 Ill. App. 3d 191, 193 (2007). A genuine issue of material fact exists where the facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts. *Libolt v. Wiener Circle, Inc.*, 2016 IL App (1st) 150118, ¶ 24. The purpose of summary judgment is not to try a question of fact but to determine whether one exists. *Id.* If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper. *Id.* ¶ 25.

¶ 14 On appeal, Bankers Life argues that the circuit court erred when granting summary judgment in favor of Gelineau. Bankers Life contends that the circuit court erred in concluding that no genuine issue of material fact existed regarding whether Gelineau induced or attempted to induce Bankers Life agents and employees to leave Bankers Life, in violation of the noncompetition provisions contained in his employment agreement. Bankers Life maintains that Gelineau affirmatively sent the LinkedIn invitation to the three employees, that the invitations directed its recipients to a job posting, and that it was Gelineau's *modus operandi* to first utilize LinkedIn to make contact as a first step in recruiting Bankers Life employees.

¶ 15 In order to plead a cause of action for breach of contract, a plaintiff must allege (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) a breach by the defendant, and (4) resultant damages. *W.W. Vincent & Co. v. First Colony Life Insurance Co.*, 351 Ill. App. 3d 752, 759 (2004). The question before us is whether the e-mails sent through Gelineau's LinkedIn account to the three individuals working in the Bankers Life's Warwick, Rhode Island, office and Gelineau's LinkedIn activity sought to induce or attempted to induce the Bankers Life employees in the Warwick, Rhode Island, area "to curtail, resign, or sever a relationship with [Bankers Life]."

¶ 16 A few courts considered the question of whether LinkedIn communications or postings can violate a nonsolicitation or noncompetition requirement. In *BTS, USA, Inc. v. Executive Perspectives, LLC*, No. X10CV116010685, 2014 WL 6804545 (Conn. Super. Ct. Oct. 16, 2014) (unpublished order), the employee, Marshall Bergmann, a webpage designer, updated his LinkedIn account to reflect his new job after he joined a competitor. *Id.* at *3. Bergmann also made a LinkedIn posting encouraging his contacts to "check out" a website he designed for his new company. *Id.* BTS sued Bergmann and his new employer claiming that Bergmann's LinkedIn posting violated his legal obligations under a nonsolicitation agreement that prohibited him from soliciting BTS customers for two years after his BTS employment ended.

¶ 17 The court rejected BTS's claim and held that there was no evidence that any BTS customer actually viewed or visited Bergmann's LinkedIn website or did any business with Bergmann's new employer as a result of the purported solicitation. *Id.* at *12. The court also noted that BTS had no policies or procedures regarding its employees' use of LinkedIn or other social media, which prohibited or restricted what Bergmann had done. *Id.* The court stated that "to this day" the employer permitted "employees to maintain LinkedIn accounts without monitoring or restriction from BTS." *Id.*

¶ 18 The court's decision in *BTS* is similar to that of a few other courts which have considered the issue. *Enhanced Network Solutions Group, Inc. v. Hypersonic Technologies Corp.*, 951 N.E.2d 265 (Ind. Ct. App. 2011) (posting of job opportunity on LinkedIn page was not a solicitation); *Invidia, LLC v. DiFonzo*, No. MICV20123798H, 2012 WL 5576406 (Mass.

Super. Ct. Oct. 22, 2012) (becoming "friends" with former clients on Facebook did not, in and of itself, violate the noncompete clause); *Pre-Paid Legal Services, Inc. v. Cahill*, 924 F. Supp. 2d 1281 (E.D. Okla. 2013) (holding that employee's postings on Facebook, which touted his new employer's product and which was viewed by former colleagues, did not violate agreement to not recruit employees from his former employer).

¶ 19     On the other hand, there have been circumstances where courts have found an employee's use of LinkedIn violated a noncompete or nonsolicitation agreement. Bankers Life points to *Coface Collections North America Inc. v. Newton*, 430 F. App'x 162 (3d Cir. 2011), where the Third Circuit affirmed the district court's grant of a preliminary injunction for the defendant, William Newton, for the breach of his noncompetition and nonsolicitation agreement. *Id.* at 169. In *Coface*, Newton entered into an asset purchase agreement with Coface, a Delaware corporation engaged in the business of collections and receivables management. *Id.* at 164. The agreement contained several restrictive covenants, including a noncompete provision providing that Newton would not "for a period of five years following the sale: (1) compete with Coface, solicit, or interfere with Coface's relationships with Coface's employees and customers; or (2) include the name 'Newton' in the business title of any entity in competition with Coface." *Id.* About eight months before the noncompete was set to expire, Newton formed and began operating a company called "Newton, Clark & Associates, LLC." *Id.* He also posted on LinkedIn that he was "Chairman of the Board" at Newton Clark and posted on Facebook that his "non-compete ends on 12/31/2010 & [he has] decided that the USA needs another excellent, employee oriented Commercial Collection Agency." (Internal quotation marks omitted.) *Id.* The posts encouraged professionals to contact him to apply for a position with his new company. *Id.* While the noncompete and nonsolicitation agreement was still in effect, Newton also sent friend requests on Facebook to current Coface employees. *Id.* at 164 n.2.

¶ 20     The Third Circuit found that the covenant not to compete was enforceable and upheld the preliminary injunction granted in the trial court. The Third Circuit analyzed a choice of law issue as to whether the agreement would be enforceable, but the issue of whether Newton's involvement actions on social media violated the noncompete provision was not decided. *Id.* at 166.

¶ 21     In *Amway Global v. Woodward*, 744 F. Supp. 2d 657 (E.D. Mich. 2010), the court considered whether an employee's use of website postings and a blog violated his nonsolicitation agreement. The employee argued that his blog postings and other social media communications could not be considered improper solicitations because they were "passive, untargeted communications." *Id.* at 674. The court disagreed and stated that "it is the substance of the message conveyed, and not the medium through which it is transmitted, that determines whether a communication qualifies as a solicitation." (Emphasis omitted.) *Id.* The court noted that, "communications qualifying as solicitations do not lose this character simply by virtue of being posted on the Internet." *Id.*

¶ 22     The different results reached by *BTS* and *Amway Global* can be reconciled when looking at the content and the substance of the communications. See John G. Browning, *New Developments in Social Media*, 35 Corp. Couns. Rev. 53, 67 (2016). In *BTS*, the communication reflected that the employee changed jobs, it identified the new employer, and it provided an example of the employee's work. *Id.* In contrast, in *Amway Global*, the former employee went further by urging his former coworkers to leave Amway by stating, "If you

knew what I knew, you would do what I do." (Internal quotation marks omitted.) *Amway Global*, 744 F. Supp. 2d at 673. The court found that this message "would readily be characterized as solicitation." *Id.*

¶ 23 Here, just as in *BTS*, the undisputed facts established that the invitations to connect via LinkedIn were sent from Gelineau's LinkedIn account through generic e-mails that invited recipients to form a professional connection. See *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Orbach*, No. 13-14360, 2013 U.S. Dist. LEXIS 159984 (E.D. Mich. Nov. 8, 2013) (noting that a message to remind someone who had not responded to an earlier invitation that the "invitation is awaiting your response" was a generic e-mail and did not constitute a solicitation). The generic e-mails did not contain any discussion of Bankers Life, no mention of ASB, no suggestion that the recipient view a job description on Gelineau's profile page, and no solicitation to leave their place of employment and join ASB. Instead, the e-mails contained the request to form a professional networking connection. Upon receiving the e-mails, the Bankers Life employees had the option of responding to the LinkedIn requests to connect. If they did connect with Gelineau, the next steps, whether to click on Gelineau's profile or to access a job posting on Gelineau's LinkedIn page, were all actions for which Gelineau could not be held responsible. Furthermore, Gelineau's post of a job opening with ASB on his public LinkedIn portal did not constitute an inducement or solicitation in violation of his noncompetition agreement. See *Enhanced Network Solutions Group*, 951 N.E.2d at 268.

¶ 24 It makes no difference that Gelineau acknowledged that he used LinkedIn to evaluate potential recruits from other geographic areas and that he made a "sheet for recruiting" indicating the differences between ASB and Bankers Life. To violate his contract, Gelineau would have to actually, directly recruit individuals working in the Warwick, Rhode Island, area. In the text message exchange between Gelineau and Van LaFermine, Gelineau observed that he was subject to a two-year nonsolicitation agreement and, therefore, could only recruit individuals outside of Rhode Island and Massachusetts.

¶ 25 Bankers Life also maintains that the circuit court improperly ignored its additional claim, that Gelineau instructed Mark Medeiros to recruit Bankers Life agents and employees from the Warwick, Rhode Island, area. In his affidavit attached to his motion for summary judgment, Gelineau stated that he never instructed Medeiros to solicit Bankers Life agents and employees from the Warwick, Rhode Island, area. Medeiros stated in his own affidavit that Gelineau never instructed him to do so and that he attempted to call Christopher Fernandez, a Bankers Life agent in February 2015, before Medeiros began working for ASB.

¶ 26 Bankers Life points to a statement made by Christopher Fernandez, where he indicated that Medeiros contacted him about working with ASB sometime in spring of 2015, and claims that this statement created a material issue of fact precluding a summary disposition in favor of Gelineau.

¶ 27 Initially, we note that Medeiros was not bound by a noncompetition agreement with Bankers Life. Contrary to Bankers Life's argument, Fernandez's affidavit does not contradict Medeiros's affidavit on a material issue because it does not contain any information relevant to Gelineau's actions. Fernandez's affidavit does not state that Gelineau instructed Medeiros to contact Fernandez to induce Fernandez to leave Bankers Life for ASB. Since the apparent contradiction as to the exact date of contact between Medeiros and Fernandez does not relate to a material issue of fact in this case, the trial court did not err in granting summary judgment in favor of Gelineau.

¶ 28 Finally, Bankers Life contends that the circuit court's summary judgment order was premature because it did not give it the opportunity to conduct additional discovery and to test the assertions made in the affidavits submitted by Gelineau and Medeiros. Bankers Life argues that it should have been permitted to depose Gelineau and Medeiros pursuant to Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013).

¶ 29 Trial courts are vested with wide discretion in ruling on discovery matters, and a reviewing court will not disturb a trial court's discovery rulings absent an abuse of that discretion. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 96 (citing *Pemberton v. Tieman*, 117 Ill. App. 3d 502, 504-05 (1983)). A trial court abuses its discretion only when "no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Foley v. Fletcher*, 361 Ill. App. 3d 39, 46 (2005).

¶ 30 Illinois Supreme Court Rule 191(b) provides:

"If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing documents in the possession of those persons or furnishing sworn copies thereof." Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013).

¶ 31 Pursuant to Rule 191(b), Bankers Life provided the affidavit of Peter Wilkins where he stated that the depositions of both Gelineau and Medeiros were necessary to test their assertions made in their affidavits. Wilkins also indicated that he expected that they will also testify about the extent and content of their communications with Bankers Life employees while employed by ASB and that Medeiros would testify about the instructions he received from Gelineau regarding recruiting Bankers Life employees.

¶ 32 But, prior to testing the opposing party's evidence, a plaintiff must possess a minimum level of information indicating that defendant is liable to him before commencing the litigation and forcing defendant to undergo discovery. *Yuretich v. Sole*, 259 Ill. App. 3d 311, 316 (1994). Here, it was Bankers Life's burden to investigate and identify instances where Gelineau allegedly solicited Bankers Life employees in his former territory to leave and join ASB. Bankers Life failed to provide any evidence or affidavits from Bankers Life employees stating that Gelineau directly contacted and solicited them to leave Bankers Life and join ASB. Because Bankers Life failed to counter Gelineau's motion for a summary judgment and attach affidavits with evidence that created a genuine issue of material fact, we find no abuse of discretion in the circuit court's ruling denying Bankers Life's request for additional discovery.

¶ 33                                                      CONCLUSION
¶ 34 Based on the foregoing, we affirm.

¶ 35 Affirmed.